Friday morning. I understand this is the second case, correct? Okay, Stinson v. Maye, Mr. Riley. Good morning, Nicholas Riley for the Plaintiff, Arvilla Stinson. The Montgomery County School Board's academic response to the horrific gang rape of Plaintiff's daughter, K.R., ultimately deprived K.R. of educational benefits in violation of Title IX. As the complaint makes clear, school board officials failed not only to stop the rape, despite opportunities to do so, but also then responded to the rape in a clearly unreasonable fashion. In particular, the board never made any attempt to take any action despite one of its officials seeing three 13-year-old boys grabbing and dragging, in the words of the complaint, K.R. into an empty building. Thereafter, the school never made any effort to independently determine what happened inside that empty building. The school never made any effort to check up on K.R., despite her credible claims that she had been raped. Mr. Riley, I will just question. I wanted to ask you, why did you not allege that Maye was an appropriate person as a sensitive principal? Right. So I think, to be clear, our view is that Maye is an appropriate person. If you're asking why it wasn't explicitly stated Yeah, I mean, you did that as to Vaughn. Right. We think it's clear from the complaint, and we allege what Maye's responsibilities are, that he is an appropriate person. I would just note that that's not in dispute here, and the board itself has referred to Maye in its brief as a board official at page 11 of the brief, at page 16 of the brief. So what you're saying, it was just an oversight, but it's been cured by the action of the parties. That's right. I think that's right. I think it's also consistent with the view, and not surprising in light of cases like Hill, that recognize that assistant principals at middle schools are appropriate persons. Okay. And I think here, if you look at the actions of that particular appropriate person, assistant principal Maye, you have, I think, a very unique circumstance, something that I think approaches what is similar to the rape bait scheme in Hill, what this court described as incomprehensible. You have an adult professional administrator at a middle school witnessing with his own eyes three 13-year-old boys grabbing and dragging a 13-year-old girl into an empty building, being told what's happening by the girl's stepsister, and still taking no action whatsoever to intervene. I'm not suggesting it's decisive, but they make much of the thing. I just want to make sure I understand the allegations of that, that the building was off, that this took place off the school campus and after school hours. Is that undisputed? It's undisputed that it took place after school hours. It really, it happened as school was letting out. So, again, as the complaint says, these girls were walking home at the time, literally just leaving school. Do we have, it's kind of difficult because it's 12-B-6, but do the parties agree, or for present purposes agree, the time that school let out and the time that this took place? I believe so. I don't know that we have an exact hour and minute, but I think the parties are in agreement that this happened as school was letting out, that the girls were leaving campus after school. And I think that's also reflected in the fact that these were still school administrators on campus. There were still, obviously, there were parent-teacher conferences that were happening. Just to be clear about it, because, and you've mentioned the parent-teacher conferences that were happening, it's after the class There were school-sponsored activities going on on campus at the time. Is that correct? That is exactly right, yes. So the administrators are still on duty. That's exactly right. The administrators are still on duty. And we would say that even if there weren't parent-teacher conferences going on, although I think that's a very important point here, school administrators would still be on duty in the moments after school lets out. Their responsibilities don't cease to exist as soon as the bell rings. But just so we're clear, the students weren't still in school. They were not in class. That's right. They were not in school in terms of, you know, the final bell had rung, so to speak. And we don't know how long had elapsed after the final bell. That's right. And I think, again, as Your Honor noted, we are at the 12B6 stage. So at this stage, I think we have to, again, I don't think this is in dispute, but to the extent that it was, we would draw all reasonable inferences in favor of the plaintiff. Because your complaint uses the words at the end of the school day, which could be interpreted as extremely close in time to the end. The other part that we were starting to get to was this where the building is, and you used the words on the perimeter, which I suppose it could be on the perimeter. If you're a geometrician, it could be on the perimeter from the inside or on the perimeter from the outside. But the district judge assumed that it was technically within the school grounds, right? That's right. And we think that was the proper inference. That would be the inference you would want. That's exactly right at this stage. And I know that the Board makes an issue of, well, even if it's on school grounds. But, for example, questions like how far away it was, why could the principal, allegedly the assistant principal, see it or not, none of that is known because we're at the 12B6 stage. That's exactly right. And I would just note, because I think this is an important point, the standard that Davis spells out, the Supreme Court's decision in Davis, is whether the harassment takes place, and this is a quote, in a context subject to the school district's control. We think that when you're talking about a building on school property, even if it's on the perimeter of school grounds. You understand that's two different things, on school property and on the perimeter. Sure. I mean, I think that on the perimeter, as I think Judge Boggs was noting, could mean on the perimeter, being on the edge of the school property, or it could mean outside the perimeter. No, but you're using them as synonyms. That's right. I'm using them because, as Judge Boggs noted, we think at the 12B6 stage that the inference we should draw is that it's on the school property. I'm just noting that Davis says that it has to be, the actual inquiry is not this kind of bright line test of whether you're on school property or off school property. It's whether it's in a context subject to the school district control, and we think it's perfectly reasonable to think that even if this was just off of school property, on the perimeter just outside of school grounds, that would still be within the context of the school district's control. Again, we're not saying that that's what happened here. Just to be clear, all three of the boys who were involved went to the school, right? That's also correct, right. So only people involved were kids who went to the school? That's exactly right. And the building was abandoned. The building was empty and abandoned at the time. That's right. And so I think what you're getting at is another good point because the fact that all these students were attending this school, that this was immediately after the school day let out, that all snacks of this being in a context subject to the school board's control. I think we can all imagine situations and are all aware of situations. If a fight breaks out, a school is letting out, even if it happens across the street, if an administrator sees it, we often expect the administrator to get involved. It's also worth noting that the school board itself claims the authority to discipline students for activities that happen off of school grounds. If we could move you to the other, I think, strong point that they have that you need to address, and I'm not implying you haven't addressed it in the briefs, but their point is, well, the principal called the police. The police conducted an investigation and determined that there was no misconduct or criminal activity involved. Therefore, the school was not required to second-guess the police officers who conducted the investigation. Right. So I think that determination that the district court relied on is mistaken for two basic reasons. One is we can talk about why it's mistaken as a general matter of law. And then second, why it's a particularly inappropriate basis for the decision in this case. So just to start with why it's inappropriate as a general matter of law, to zoom out, I think it's important to recognize what the role of the police is and what the role of Title IX is. We think it's perfectly ordinary and reasonable, and I want to be very clear about this, perfectly reasonable for school administrators to rely on the police to conduct criminal investigations, to determine whether or not a crime has been committed. But Title IX is not a criminal statute. Police are not. I understand that, but the police didn't just say there's no crime here. The police, quote, deemed the rape consensual sex and took no further action, end of quote. Right. And so I think what that gets to is the next point I was going to make, which is that forcible rape is not the only kind of student-on-student harassment that's actionable under Title IX. The police determining that this was consensual, which, again, there are problems, I think, even with that determination, does not mean that there's no other type of harassment or no other type of Title IX violation that could have happened. Do you have any case or activity where something that, passing whether it's a correct determination, is consensual counts as harassment? There's sort of two possibilities here. One is you say it's harassment even if it's consensual. The other is that they should have conducted their own investigation and their own disciplinary proceedings regardless of what the police did. Are you arguing both of those or one or the other? I guess what I'm arguing is a little bit of both. I think just to be clear, the fact that the police determined this was consensual for the purposes of ruling out forcible rape as a crime does not mean that they determined that what happened in there was not harassment for the purposes of Title IX. And I think if you look at the Davis case, the Davis case doesn't mention rape because it wasn't about rape. And that's a good example of the type of— But was the administrator Vaughn entitled to take it as a given, given the police investigation, that the sex was consensual? No, he was not for a few reasons. You don't allege any inadequacy of the police investigation? Not explicitly in the complaint, but we also don't describe any police investigation at all. And part of the reason for that, just by way of background, is the police never spoke to K.R. or her mother, so they don't know what the depth of the police investigation was. But I don't think it's reasonable at the 12B6 stage to infer here that the police did a thorough, complete investigation. But even if we were going to draw that inference, which again is improper at this stage, that still wouldn't explain the other deficiencies in the school board's response. And you're saying that the school official has an obligation to investigate the investigation to determine if it was inadequate? No, no, to be clear, that's not what I'm saying. I'm saying the school board has obligations beyond investigating whether or not a rape occurred. I understand that, but my question to you, and you're avoiding the more difficult question, which is a natural response. My question is, was the principal, once he was told that the police had determined that it was consensual sex, entitled to assume for his purposes and for Title IX purposes that it was consensual sex, whether it was also involved or was the product of harassment, why wouldn't he be entitled to think that he didn't have to investigate the investigators? Brad, if I can continue. Sure, sure. I think as a general matter, in an ordinary case, absolutely it would be reasonable for a principal to rely for that narrow determination that the police have made on that narrow determination, setting aside that that wouldn't absolve the principal of other Title IX obligations. In this case, however, there are good reasons why Principal Vaughn should not have necessarily relied on that determination. For one, we know that under Alabama law, these students were well below the age of consent, so the consent determination might have raised red flags. We know that Principal Vaughn was aware of the rumors. Well, they're well below the age of consent for purposes of statutory rape, but that also depends on the age of the prospective suspects or defendants. And what consensual means here is consensual in the sense that she consented to it in the law enforcement officer's determination. If I could just respond briefly. Sure. I think that's exactly right, Your Honor. I was just making the broader point that there are good reasons to be skeptical of a consent determination in this particular context. One is the age of the students. Two is the fact that the principal, as we know, was aware of the rampant rumors that students had run a train, the vulgar colloquialism for gang rape on KR. Three is the doctor's note that they received. Four is their awareness of the post-traumatic stress she was feeling in her own account, the hospital's verification that she had been assaulted. We just think there's plenty of circumstances here that, at the 12B6 stage, should preclude the court from inferring that it was reasonable. So at the 12B6 stage, to go back to my original question, the appropriate person, Vaughn, was not entitled to rely on the police investigation determination that it was consensual. In this case, and just one final point, I'll sit down. I see my time is up. We don't even know, because the complaint doesn't allege this, that that is the reason why Vaughn took no action. It doesn't say explicitly that the school board learned of the results of the police investigation or when they learned of the results of the police investigation and that that was their basis for not taking further action. And that may be the case. And the board can certainly bring forward evidence to that effect at the summary judgment stage, but we can't draw those inferences here. Thank you. Thank you. We'll give you a full three minutes on reply. And now we'll hear from Ms. Hill. Good morning. May it please the Court, Dana Hill for Montgomery County Public School District. The allegations in this case are horrible. At first, one may assume that there must be some legal remedy against the school district whenever a student is allegedly raped by three of her classmates. I don't think that's the problem here. I mean, that's awful, of course. The problem is that the allegations are that she was grabbed and dragged in front of the assistant principal, and he was also told what was going on, and he did nothing. I mean, that's what makes this case even more horrible than just rape, which is in itself obviously horrible, but that the trusted adult who could have done something to stop it did nothing to stop it. Yes, Your Honor. Well, with respect to Assistant Principal Tremaine May, this issue of his failure to respond, the issue before the Court is whether Ms. Stinson, on behalf of KR, has alleged sufficient facts demonstrating that the district, as a funding recipient, made an official decision to remain idle in response to the sexual harassment of KR. But if he counts as an appropriate person, why doesn't that fulfill that requirement? Well, first let's note that the second amended complaint, and I'll direct that report to the appendix pages 43 through 46, was based upon the principal's alleged misconduct, not Mr. May. But nevertheless, in the facts section, the complaint is devoid of sufficient allegations to pin this quote all on Assistant Principal May. What the allegations are is that KR's stepsister, who was walking with KR before the attack, alerted Mr. May to the conduct. There are absolutely no allegations in the complaint as to what KR witnessed before she alerted Mr. May. Except that it says also in the terminology that's used, although I note that through the briefs the defendants used the term pull, but in the actual complaint it says grabbed and dragged, that the three boys grabbed and dragged, and that Assistant Principal May saw the three boys grab and drag. I mean, why isn't that sufficient? As alleged, correct. It is that May only witnessed the boys drag and grab KR. But isn't that enough? I mean, three boys are grabbing and dragging a girl to an abandoned place. Shouldn't that set off some kind of alarm bells? I mean, is that something that an assistant principal should allow, especially in view of the handbook rules talking about bullying and harassment and no physical touching? Well, Title IX addresses sexual harassment on its face. That conduct is not overtly sexual in nature. It's still bullying and harassment, though. It is bullying and harassment, and if he had some legal duty to intervene, at most it would sound negligent for which the plaintiff can seek a remedy in state court. But that does not rise to the level of deliberate indifference to impose district liability under Title IX. Why not? Well, as mentioned, what he witnessed, according to the allegations, was dragging and pulling. It could have been horseplay. So just to be clear and make sure I understand your argument, your argument is the reason it doesn't satisfy Title IX is because grabbing and dragging on its face do not amount to sexual harassment or discrimination. Is that your argument? That's only part of my argument. Okay. The main point of my argument is under Title IX, district liability looks at the entire totality of the circumstances. And I would only encourage this court not to focus on Mr. May but to also look at what the principal did once he was aware of what had allegedly taken place. Which was he said to her, you have an adult body like my girlfriend, and he did nothing. He didn't talk to the students. He didn't talk to KR. He did nothing. Then he told the mother that she should switch schools after she had missed eight days of class and the doctor in hospital had said that she had been raped. I mean, how does that help your client? Well, the principal called the police the day, immediately, the day it was brought to his attention. The district cannot reasonably be faulted for Principal Vaughn contacting the police and letting it take the lead on an alleged incident whereby criminal charges or juvenile offenses was a real possibility. When you said you should look at the whole circumstances, even if Vaughn did all right, if May did not, how does that get the district off the hook? The way Davis and other cases talk about is did the district of an appropriate person have knowledge in advance and take no action to prevent further harassment? And why doesn't May fit right into that? On the allegation, he had knowledge both from the stepsister and from his own observation at a time prior to the actual event. So he fits both parts of that, and whatever Vaughn does doesn't exonerate him, does it? Well, under the deliberate indifference standard, the district's response must be clearly unreasonable in light of the totality of the circumstances, no. And what was known here, that on the day of the assault, K.R. was walking off campus. The abandoned building was on the perimeter of the property. This was an attack that did not take place during school hours. It's been conceded that school had dismissed, which is why she and her sister were walking off campus. Wasn't May still on duty? Mr. May and Mr. Vaughn were both still on campus, but this is not. Still on duty? Weren't they being paid to be present at that time? Well, school administration do get paid to stay after school if that's the case. Okay, so they were still on duty, right? They had, and we're talking about four students and only four students. There's nobody else involved, four students who are subject to their supervision. And your position is he didn't have any obligation whatsoever? He being Mr. May or Mr. Vaughn? Mr. May. Mr. May, and as I mentioned before, he may have had some legal duty. He was still on campus. He is an administrator at the school. But that's not the standard for deliberate indifference. Deliberate indifference looks at the totality of the circumstances in light of known circumstances. And the question before the court is whether the district's response in totality is clearly unreasonable. And the district's position is meeting with K.R., Principal Vaughn met with K.R. I know you want to focus on the second half of this. Sure. But let's talk about the first half. Okay. Why was Assistant Principal May's failure to do anything whatsoever when he allegedly saw these three students that he was responsible for drag, grab and drag a fourth student into an abandoned building? Why was that not deliberately indifferent when he did nothing? Well, deliberate indifference in all the cases that this court has looked at, it looks over a total of time. If deliberate indifference can be triggered in a moment during an alleged rape because someone did not intervene to stop it, then the district would be subject to liability every time under Title IX. But that's not the standard. Except that. Okay. It's not like a situation where a rape occurred on campus and nobody knew about it. It's a situation where he's watching it happen and he does nothing. Well, I don't believe the second amended complaint, none of the complaints, the original, the first amended or the second amended complaint, there's not one allegation that Mr. May watched a rape take place. Watched the three boys grab and drag. When we're looking at facial plausibility of the complaint, the question is, is watching the boys grab and drag her, should that have given him notice that she was about to be raped? I think that that is not a reasonable inference given what happened during the situation. What else did it give notice of? What was the innocent explanation of three boys grabbing and dragging a girl into a building? Well, the complaint is devoid as to what exactly. Now, I'm not talking about the complaint. I'm talking about you're in my common sense. You see three teenage boys grabbing and dragging, dragging a girl into a building which is not occupied. What's the reasonable inference from that? Well, let's just be clear. The allegation does not say what portion of the incident that took place. But nevertheless, Your Honor. The allegations don't say what portion of the incident took place. I don't understand that. Well, let me clarify. The allegations in the complaint was that May saw her dragged and pulled. It does not say that he saw her be pulled into the abandoned building. I thought it was towards a building on the perimeter of the campus. The specific allegation is that Mr. May saw them dragging and grabbing. That's 36, but it's in the context of the statement in 33, a group of boys grabbed and dragged her into a building. The stepsister alerted defendants to the conduct, which would obviously refer to paragraph 33. And 36 says he witnessed them grabbing and dragging. I mean, that's pretty, you know, one could be a little more grammatical, but isn't that all pretty plausibly what is alleged here? Yes, Your Honor. I mean, it's true that he doesn't allege that he saw anything happen once they got to the building or in the building, but there's nothing that indicates anything other than he saw and knew about the conduct up to the point of the building. Isn't that a fair inference, all reasonable inferences? I don't know if that's a reasonable inference, that he could have anticipated she was going to be sexually assaulted. It could have been a fight. It could have been many things. A fight? A fight between the three boys and one girl? Yes. And they were dragging her into the abandoned building to beat her? You have not answered my question. What is the innocent inference that a reasonable human being would draw from the fact that three teenage males were dragging a teenage female into an abandoned building on the perimeter of the school property? If that is the inference the court is drawing from the allegation. You're not going to answer my question, are you? Yes, Your Honor. Okay, then tell me the innocent explanation. What were they going to do that was exemplified or predicted or forecast by them dragging her into an abandoned building off campus or on the perimeter of the campus? I do believe, Your Honor, that it is not a stretch of the imagination that she could be sexually assaulted. I'm not asking you to stretch your imagination in that direction. I'm asking you to stretch your imagination in the innocent explanation. And I'll tell you, I'm not going to harass you any further, speaking of harassment, but I'm going to just simply infer, and if I wrote the opinion, I have no idea I will, I would say counsel for the defendants could not come up with an innocent explanation despite being importuned to do so on numerous occasions during the oral argument. Yes, sir. One last chance. Okay. I don't know that there is an innocent result from those actions. What I do believe is his duty to do something in that moment may sound in negligence or wantonness at the state court level. But what is before this court is if the district, as the funding recipient, remained idle. And I do not believe, and the allegations of the complaint demonstrate, that the district, through Principal Vaughn, did take action. Counsel, let me ask you this on that point, that a lot of the counter there, might that not go at a summary judgment stage or at a trial stage? That is, you know, maybe the Principal May is five feet tall and these teenagers were already six foot three, and he said, you know, hey, it's just not my business to get involved right now. On the other hand, depositions might say, you know, it happens all the time at this school. But wouldn't that go beyond the 12B6 stage? No, Your Honor. I think with the allegations that we have before us, particularly the allegations of the police's determination that the incident involved was consensual in nature, Title IX addresses sexual harassment. Unfortunately, we live in a time where middle school students do voluntarily participate in sexual activity. The crux of sexual harassment is that the conduct be unwanted and unloved. But the ones who participate voluntarily don't have to be grabbed and drugged into an abandoned building. That's fair, Your Honor. I understand that. Mr. Vaughn, when he contacted the police, met with the mom and KR. The allegations support that the district was not deliberately indifferent once it had actual notice of the actual rape. Well, so here's the thing about that. Couldn't one say that May had actual notice of a potential rape when he saw her being grabbed and dragged? And he had time to do something about it. I'm not sure the allegation shows that he had time to do something about it. Well, he could have stopped them. Why isn't that a reasonable inference from the allegations? Well, looking at the circumstances, you know, if this incident is happening at the end of the day, school is out, it may or may not have been on campus. We do not know where Mr. May was standing at the time. And if the allegations in the complaint does not demonstrate that he had the opportunity to jump in, stop, or do anything, I think that that is an unreasonable inference from the allegations that are before us, particularly when it is alleged that the police determined that it was consensual in nature and Principal Vaughn contacted the police immediately on the day of the attack. That doesn't really have anything to do with whether he had an opportunity to stop it, does it? Well, Your Honor, I would just reiterate that the allegations of the complaint, which was amended twice, does not give us those factual details. Okay. Thank you, counsel. Mr. Raleigh, three minutes. Thank you, Your Honor. If you need it. Thank you, Your Honor. Just very briefly, just to pick up on this last point about the allegations in the complaint surrounding where May was standing, what he might have seen, what he could have done, did he have time to respond, I think that just underscores that we're at the 12 v. 6 stage. Those inferences have to be drawn in favor of the plaintiff. I would just add to that point, you know, there are things that someone in that circumstance could do short of actually physically intervening. No one is suggesting he has to physically charge in and pull these boys off. Simply, he did nothing, right? He could have called over and said to KR, are you okay? He could have called over to the boys and said, what's going on? This is 2014. He could have pulled out his cell phone, called the police. If there were other administrators or teachers around, he could have called over to them. There are any number of steps short of the physical, excuse me, short of physical intervention. I didn't see that you alleged there were other teachers around. We did. We did. That's right. Well, I mean, you keep going back to the complaint. Aren't we required to go there, too? That's right. You are. And I'm just saying that in all these gaps in kind of the information that the board is drawing and asking for inferences to be drawn in their favor, you can do the exact same thing with plaintiffs. The difference is that at the 12B6 stage, any reasonable inference. Your complaint does say there are parent-teachers meetings with some of KR's teachers, plural. So, again, we don't know how many or whether they were indoors or outdoors. That's right. We don't know that information. My only point is just we're at the 12B6 stage. On this last question, last point that came up about whether May had time to do something about it, I think the court has a good understanding of this. Again, you have the 12B6 inferences. The fact that we're at the 12B6 stage is a factor here. But also, you know, in the Hill case, I think it's worth noting one of the facts that this court pointed to to show that the school administrators had noticed in Hill was the fact that one of the assistant principals learned of the rape bait scheme, quote, a few minutes before it went into effect. And, you know, reasonably, this court thought that was sufficient time for the assistant principal to act there. We think a similar circumstance applies here. I'm happy with my remaining time to address any other questions the court might have. I have one, and it's not legally – well, it is in a general sense legally relevant. But I've had a number of these cases in which the female victim was obviously a minor of some sort, and the complaint never alleges the age. Is there a reason for that? I don't think there's a reason for not alleging the age specifically here. We do allege she was in eighth grade at the time. We think it's reasonable to infer that she was. That's better than most of the things I've seen. But anyhow, very much a minor. Okay. Thank you. I assume we're ready for the first case now? Yes. Okay. United States v. Hardy.